# HULING v. KAW VALLEY RAILWAY AND IMPROVEMENT COMPANY.

### ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF KANSAS.

No. 230.   Argued and submitted April 1, 2, 1889. — Decided April 22, 1889.

In proceedings commenced under a state statute for condemnation of land for a railroad, a published notice in compliance with the terms of the statute, specifying the section, township and range, county and State, in which it is proposed to locate the railroad, is sufficient notice to a non-resident owner of land therein, and such publication is "due process of law," as applied to such a case.

When, after notice to the owner as required by law, land has been condemned for a railroad by commissioners regularly appointed and duly sworn, who discharged their duties in the manner required by law, the question whether one of the commissioners was or was not a freeholder, as directed by the statute, is not open for consideration collaterally in an action of trespass by the owner against the railroad company for entering on the land after condemnation.

TRESPASS. Judgment for defendant. Plaintiff sued out this writ of error. The case is stated in the opinion.

*Mr. Eppa Hunton* (with whom was *Mr. Albert Young* on the brief) for plaintiffs in error.

*Mr. George W. McCrary* and *Mr. Wallace Pratt* for defendant in error submitted on their brief.

MR. JUSTICE MILLER delivered the opinion of the court.

This action was brought in the court below by the plaintiffs in error against the Kaw Valley Railway and Improvement Company, as defendants, in the nature of an action of trespass on land. It was in fact to recover for the value of land taken by the railroad for its right of way, and for damages to adjacent lands, houses, fences and property, incident to the taking. The land was a part of a quarter-section in Jackson Township, Wyandotte County, Kansas. The railway company answered by setting up proceedings which they had taken under the

laws of Kansas for the condemnation of the land for the use of the railroad, and the payment of $725 into the treasury of that county in accordance with law, that being the amount which the commissioners who conducted the condemnation proceedings had allowed the plaintiffs. The defendants set out these proceedings in full, and relied upon them, as a sufficient defence for taking possession of and using the land.

The parties waived a jury, and the case was tried by the court, who found for the defendant, the railway company, and entered a judgment against the plaintiffs for the costs. We are called upon to review that judgment.

The record of the case is a very singular one, as there is no special finding of facts by the court, but a general finding in favor of the defendants. Instead, however, of a finding of facts, there is a bill of exceptions, which itself contains the entire history of the case, including the pleadings, the motions, the evidence, the judgment of the court and all that is in the record besides. The only point raised by this bill of exceptions was as to the admission of the testimony of L. H. Wood, who acted as one of the commissioners by appointment of the district judge of Wyandotte County, in which the land lay. The deposition of Wood was directed to the question whether he was a freeholder of Wyandotte County, and, although he declared that at the time he was appointed as commissioner he was the owner of considerable real estate, upon further examination he stated that the title to it was in some other person, who held it as trustee for him. This attempt to raise the question of whether he was a freeholder within the meaning of the statute of Kansas on that subject was ruled out entirely by the exclusion of all his testimony on the trial, and this constitutes the principal assignment of error in the case.

Article 9 of chapter 23 of the Compiled Laws of Kansas, page 224, entitled "Appropriation of lands for the use of railway and other corporations," provides two modes of doing this. The first of these modes is by an application to the board of county commissioners, which is the governing body of the county, to lay off along the line of the proposed road as located by the company a route for such railroad. Upon this

application being made in writing, the board of county commissioners shall forthwith proceed to lay off such route, and have the same carefully surveyed, and appraise the value and assess the damages to the interest of each of the owners of the land so taken; all of which they shall embody in a written report and file it in the office of the county clerk in such county. The county clerk shall immediately file a copy of this report in the office of the treasurer of the county; and, if the company shall pay the amount of this appraisement into the treasurer's office, this shall be certified upon the copy of the report under his hand and seal of office, and he shall pay over the amounts to the persons, respectively, entitled to them. Upon the filing of a copy of this report, and a certificate of the payment of the money, in the office of the register of deeds, for the proper county, the company shall have the right to occupy the lands so embraced within such route for the purposes necessary for the construction and use of its road. These proceedings, it is declared, shall vest in the company, its successors and assigns, the perpetual use of the lands as soon as the railroad has been constructed.

Section 86 of this article provides that before the county commissioners shall proceed to lay off any railroad route, notice of the time when the same shall be commenced shall be given by publication, thirty days before the time fixed, in some newspaper published in the county. It also provides that an appeal may be had from the determination of the board of county commissioners as to the value of the lands and other damages to the District Court of the county, which appeal shall only affect the amount of compensation to be allowed, but shall not delay the prosecution of the work, if the company shall pay the amount as aforesaid and execute a bond with sufficient security to pay all damages which may be adjudged to be paid by the said court.

Another mode of appropriating this land, by the exercise of the right of eminent domain, for the use of railroads, is provided by § 87 of the same article. In this case, the railroad company, instead of applying to the board of county commissioners, may apply to the judge of the District Court of the

county through which the railroad is to be built, who shall appoint three commissioners, who shall be freeholders and residents of the county, to make the location, appraisement and assessment of damages, instead of the county commissioners. This appointment shall be made in writing under the hand of the district judge, upon the written application of the corporation or other persons, and the application for and certificate of appointment shall be recorded in the office of the register of deeds of the proper county. Such commissioners being duly sworn, shall perform all their duties in the manner and under the same regulations and restrictions as are provided in the case where they are performed by the county commissioners, and the subsequent proceedings, including the right of appeal, shall be the same.

In the case now before us, the proceeding was had under the latter provision of the statute. The transcript on its face seems to be regular in every particular, showing a full compliance with all the requirements of the statute on the subject. There was the proper publication made in the newspaper, and, indeed, so far as the face of the record is concerned, no objection seems to be made to it, except that it is very urgently argued that the notice published was not sufficient because it did not apprise the party of what land was to be taken; and, if in that respect it was a sufficient compliance with the statute, it is then insisted that the statute itself was void as authorizing the taking of private property without due process of law.

In regard to this objection, we do not see how the notice is deficient, if any notice short of one actually served upon the party can be sufficient. With regard to the description of the property, the notice gives all that could be known at the time it was published. As the commissioners had the power to determine the precise location of the road, that location could not be described with more precision than it is in the newspaper publication set out in the proceedings. It is directed to all persons owning lands on the line of the railroad as the same is now or may be located through section 23, township 11, range 25, in the county of Wyandotte and State of

Kansas; and it notified persons owning land in that section that the commissioners duly appointed would, on Monday, the 22d of May, 1882, proceed to lay off the route for said road through said section and appraise the value and assess the damages to each quarter-section through and over which the railroad might be located. To the plaintiffs in this case, who are the owners of a quarter-section of land in section 23 of that township, this was a sufficient warning that the road might run through their land at that point, and sufficient notice of the time and place where this matter would be determined, as also the amount to which they would be entitled for the appropriation of their land. If this notice had been read by the plaintiffs, it was a clear and distinct notification to them that it would be determined at that time whether any, and how much, of their land in section 23 would be taken for the railroad, and the value to be set upon it by the commissioners; and we think that this was all the notice they had a right to require. Of course, the statute goes upon the presumption that, since all the parties cannot be served personally with such notice, the publication, which is designed to meet the eyes of everybody, is to stand for such notice. The publication itself is sufficient if it had been in the form of a personal service upon the party himself within the county. Nor have we any doubt that this form of warning owners of property to appear and defend their interests, where it is subject to demands for public use when authorized by statute, is sufficient to subject the property to the action of the tribunals appointed by proper authority to determine those matters.

The owner of real estate, who is a non-resident of the State within which the property lies, cannot evade the duties and obligations which the law imposes upon him in regard to such property, by his absence from the State. Because he cannot be reached by some process of the courts of the State, which, of course, have no efficacy beyond their own borders, he cannot therefore hold his property exempt from the liabilities, duties and obligations which the State has a right to impose upon such property; and in such cases some substituted form of notice has always been held to be a sufficient warning to

the owner, of the proceedings which are being taken under the authority of the State to subject his property to those demands and obligations. Otherwise the burdens of taxation, and the liability of such property to be taken under the power of eminent domain, would be useless in regard to a very large amount of property in every State of the Union.

It is, therefore, the duty of the owner of real estate, who is a non-resident, to take measures that in some way he shall be represented when his property is called into requisition; and if he fails to do this, and fails to get notice by the ordinary publications which have usually been required in such cases, it is his misfortune, and he must abide the consequences. Such publication is " due process of law " as applied to this class of cases. *Harvey* v. *Tyler*, 2 Wall. 328; *Secombe* v. *Railroad Co.*, 23 Wall. 108; *Pennoyer* v. *Neff*, 95 U. S. 714, 722, 743, 744; *Hagar* v. *Reclamation District*, 111 U. S. 701; *McMillen* v. *Anderson*, 95 U. S. 37; *Davidson* v. *New Orleans*, 96 U. S. 97, 105; *Boom Co.* v. *Patterson*, 98 U. S. 403, 406.

Conceding that these proceedings subjected the land in controversy to the jurisdiction of the commissioners appointed by the district judge of Wyandotte County, the question as to whether one of those commissioners was a freeholder or not is not open to consideration in this suit. The commissioners were regularly appointed by the proper officer, and took the proper oath, and have discharged their duties in the manner required by law. The railroad company has paid the money and taken possession of the land which was condemned by those commissioners. The plaintiffs cannot recover in the present action without a holding in this collateral proceeding that all that was done by those commissioners is void by reason of this want of qualification in one of their number. The proper time for these plaintiffs to have taken this objection to Mr. Wood as a commissioner was either at the time of his appointment, or at the time he proceeded to act as commissioner. If it be objected that they could not be supposed to have any notice of the application for the appointment of these commissioners, and of the time and place when the judge would act on that application, the law presumes that they had notice,

and might have attended at the time the commissioners entered upon their duties. If this objection had been then taken, it might have been sustained, or it could have been taken by way of appeal from the proceedings of the commissioners; but to permit such an objection as this to prevail at this time, and thus defeat the whole of the proceedings upon this narrow ground, is a proposition unsupported by sound principle or by authority. It is a collateral attack upon a proceeding which has been completed according to the forms of law. There is no more reason why this want of qualification should, when shown at this stage of the proceeding, invalidate it all, than there is why the discovery, after a judgment and after that judgment has passed beyond the control of the court, that one of the jurors was disqualified, should make absolutely void the verdict and judgment. It is only one of those cases frequently occurring in the administration of the law, in which it is better that errors not pointed out at the proper time should be disregarded, than that, by attempts to correct them, evils much worse should follow than those incident to the error. *Commr's of Leavenworth Co.* v. *Espen,* 12 Kansas, 531; *Venard* v. *Cross,* 8 Kansas, 248; *Cooper* v. *Reynolds,* 10 Wall. 308; *Voorhees* v. *Bank of the United States,* 10 Pet. 449.

*The judgment of the Circuit Court is affirmed.*