TUNIS R. HILL

*v.*

WILLIAM HENRY, or his heirs, devisees, or personal
representatives.

[Filed March 25th, 1904.]

Section 11 of the Chancery act (Revision of 1902), providing for publication against unascertained heirs, devisees or personal representatives and a decree against them by their class designation only, does not apply to the "Act to compel the determination to claims to real estate in certain cases and to quiet the title to the same." If it did apply, would it contravene the fourteenth amendment to the federal constitution as not being due process of law. *Quære.*

Hill *v.* Henry.

On final hearing.

*Mr. Charlton A. Reed,* for the complainant.

*Mr. George T. Parrott,* for William Russell, administrator of William Henry.

STEVENS, V. C.

This is a bill to quiet title, the cloud to be removed being a possible claim of a right to dig for black lead under an agreement made by the then owner of the land with one William Henry in the year 1810. Its peculiarity consists in the fact that, as the bill itself is framed, it contains no defendants except "William Henry, or his heirs, devisees, or personal representatives." It alleges that William Henry is dead, and so the suit is not against him. No other individuals are specially named and so the suit is not against individuals but against classes, those classes being (1) the heirs of Henry; (2) his devisees, and (3) his personal representatives. There is no *direct* allegation that Henry died leaving heirs or devisees. That he did is only a matter of inference from the allegation that complainant has been unable to ascertain their names and residences. There is no allegation that any members of these classes now survive.

This anomalous proceeding, so contrary to the ordinary course of legal and equitable procedure, is sought to be sustained by section 10 of the Chancery act of 1902 (*P. L. of 1902 p. 512*), which is a re-enactment of the act of 1903 (*P. L. of 1903 p. 256*). It provides as follows:

"In all actions hereafter commenced in the court of chancery whenever it shall appear by the allegations of the bill or petition duly verified by affidavit thereto annexed, that any person mentioned in said bill or petition, or his heirs, devisees or personal representatives are proper parties defendant to said bill of complaint or said petition, and that the complainant or petitioner, after diligent and careful inquiry therefor made as in case of absent defendants, has been unable to ascertain whether such person is still alive, or if he is known or believed to be deceased, has been unable to ascertain the names or residences of his heirs, devisees or personal representatives or such of them as may be proper parties defendant as aforesaid, such action may proceed against

such person by name and his heiis, devisees or personal representatives, as in the case of absent defendants whose names are known; and such notice as is required by law to be published against absent defendants, in default of personal service, addressed to such person by name, and to his heirs, devisees and peisonal representatives, and containing such further statements and giving such further time as the chancellor may by his order direct, shall be first published and mailed in such manner as the chancellor may by his order in such action direct."

Regarded merely as an invitation to come in and defend, this section, so far, would seem to be unobjectionable on the theory of the decision in *Kirkpatrick* v. *Post, 8 Dick. Ch. Rep. 592.* Application was there made to set aside an order of publication against two absent and non-resident defendants, against whom a personal demand was made, and against whom, it was argued, no decree could, under the doctrine of *Pennoyer* v. *Neff, 95 U. S. 733,* be taken. The application, contrary, apparently, to the practice which prevails in the United States courts (*Puster* v. *Parker Mercantile Co., 19 Dick. Ch. Rep. 600*), was denied both in this court and on appeal, on the ground that the publication being notice merely to the defendants of the pending litigation of which they might avail themselves by coming in if they saw fit, it could do no harm. "It was not to be assumed," said Chief-Justice Beasley, "that the court of chancery would pronounce a decree that would be illegal and contrary to the federal constitution as not being 'due process of law.'"

But the section under consideration goes further. It provides that in case the person known, or believed to be dead, shall not appear, plead, answer or demur within the time limited,

"such action may proceed in all respects as if such person, or his heirs, devisees or personal representatives had been duly named and described and served with process of subpoena in said action and had failed to plead, answer or demur within the time thereto allowed by law."

Section 11 prescribes the effect of the decree.

"All such defendants and all persons falling within the description of heirs, devisees or personal representatives of the defendant, supposed to be dead as aforesaid, shall thereupon be bound by all orders and decrees in said cause, as if they had been duly named and served with process in this state," &c.

Hill *v.* Henry.

Two points are taken—*first,* that the proceeding authorized is not "due process of law;" *second,* that sections 10 and 11 have no application to the act to quiet title.

Before discussing these questions I ought to state how they have been raised. It appears that one William Russell, who was a lineal descendant, not of William Henry but of William Henry's wife by a former husband, seeing the order of publication, made application to the surrogate of Morris county and had himself appointed administrator of William Henry, who is believed to have died over fifty years ago. He then applied to be admitted a defendant, and was so admitted, and filed an answer, setting up a claim under the agreement of 1810. It is plain under the decisions that the agreement was a mere license, long since expired (*East Jersey Iron Co.* v. *Wright, 5 Stew. Eq. 248*), and that even if it were an incorporeal hereditament, which had descended to Henry's heirs, Russell, either as administrator or personally, had no interest in it. He was not heir of Henry, and so he could not take as heir; and the right, if it subsisted, not being personalty, he could not take as administrator. Against Russell, therefore, it seems to me that there ought to be a decree, for whether the publication was authorized or not, whether it had or not the force of an invitation to come in and defend, the bill called upon the legal representative to answer. In response to the call he appeared, answered and claimed. He therefore waived any irregularity in the proceeding and stood in the same position as if he had acknowledged due and legal service of a subpœna to answer.

But the important question is, can the court make a decree against heirs and devisees who have not come in? Although they have not raised the question, it is not, in the language of the before-quoted passage from the opinion of the court of errors and appeals, to be supposed that this court will make a decree that will be illegal or that may be contrary to the federal constitution.

The federal question is to be resolved by the decisions of the supreme court of the United States. "A judgment obtained without jurisdiction over the person is," says Chief-Justice Beas-

ley in *Elsasser* v. *Haines, 23 Vr. 15,* "of no legal avail either at home or abroad," though apparently sanctioned by a local statute.    To the same effect are *Eliot .v. McCormick, 144 Mass. 10; Needham* v. *Thayer, 147 Mass. 536.*    If of no legal avail, it ought not to be made.

The following propositions have been established by the supreme court:

*First.*  That a personal judgment is without validity if it be rendered by a state court in an action upon a money demand against a non-resident, proceeded against by publication but not personally served with process within the state and not appearing.

*Second.*  That no validity is imparted to such a judgment by the fact that the defendant has, at the time the action is commenced, property within the state upon which a levy can be made under the judgment.    *Pennoyer* v. *Neff, 95 U. S. 714.*

*Third.*  That even a judgment for costs in an action of trespass to try title (the plaintiff claiming only an undivided interest), although it is a suit *quasi in rem,* cannot be made out of the undivided share of the non-resident, he not being personally served and not appearing.    *Freeman* v. *Alderson, 119 U. S. 185.*

*Fourth.*  In suits strictly *in rem,* that is, where the property itself, conceived of as having done the wrong or as having been the instrument of its commission, is being proceeded against; and in suits *quasi in rem,* that is, where the suit is against the person in respect of the *res*—where, for example, it has for its object partition or the sale or other disposition of defendant's property within the jurisdiction, to satisfy plaintiff's demand by enforcing a lien upon it—personal service within the jurisdiction or appearance is not necessary.    The decree can, however, extend only to the property in controversy.    But there is this distinction between these two classes of proceedings: in the former, public citation to the world is all that is necessary and the decree binds everybody; in the latter, defendant's interest is alone sought to be affected; he must be cited to appear

and the judgment therein is conclusive only between the partties. *Freeman* v. *Alderson, supra.*

*Fifth.* Both of the classes of cases last mentioned have this in common. The *res,* the subject of the controversy, is within the jurisdiction, and it is because it is so that the court is able to affect defendant's interest in it. There is a further case, illustrated, so far, by proceedings to quiet title. The case is based upon a denial of any *"res"* in the defendant. In this class of cases the supreme court has taken a distinction. If the decree sought be a decree operating *in personam* only, to be made under the ordinary jurisdiction of equity—a decree, for instance, that the defendant make or cancel a conveyance;. that defendant be restrained from asserting his claim—it can only be made after personal service within the jurisdiction or after appearance. *Hart* v. *Sansom, 110 U. S. 151.* But if the decree be taken under a statute which authorizes the court to determine the question of title and to decree it to the party entitled, then it binds without such service or appearance if the statute has provided "a reasonable method of imparting notice." *Arndt* v. *Griggs, 134 U. S. 316.*

The statute under review would seem to be operative and unobjectionable so far as it relates to proceedings strictly *in rem* if the legislature. has conferred, or should confer, any jurisdiction in cases of that class. As a general notice to the world would be good, so a notice to those classes of persons who might be interested in the subject of the controversy would appear to be good also. When we come to proceedings *quasi in rem*—that is, to proceedings against persons in respect of property within the jurisdiction—the case is more doubtful, for in this class of cases one of the requirements mentioned by the supreme court is citation to the defendant whose rights are to be affected and who alone will be bound. It is true that this citation may be by publication and mailing, but hitherto, as far as the decisions have gone, there has been, except in tax and condemnation cases, which are manifestly peculiar, a *named* defendant, and publication against him has been justified on the ground of the probability that the con-

.structive notice thus given would lead to actual notice. Mr. Justice Brewer, in *Arndt* v. *Griggs, supra,* says that the well being of every community requires that the title to real estate shall be secure and that there shall be convenient methods of determining any unsettled questions respecting it. He says further that for the purpose of such determination "the state may provide any reasonable method of imparting notice." In considering the question presented by section 10 of the Chancery act, his declaration should be read perhaps, not only in connection with what is said in *Freeman* v. *Alderson, supra,* but also with the following passage in *Boswell, Lessee,* v. *Otis, 9 How. 350:* "No principle is more vital to the administration of justice than that no man shall be condemned in his person or property without notice and an opportunity to make his defence. And every departure from this fundamental rule by a proceeding *in rem,* in which a publication of notice is substituted for a service on the party, should be subjected to strict legal scrutiny. Jurisdiction is not to be assumed and exercised in such cases upon the general *ground that the subject-matter of the suit is within the power of the court."*

A general notice with an opportunity to be heard has been held to be sufficient where the land is to be sold for non-payment of taxes (*Glidden* v. *Harrington, 189 U. S. 255*) or where land is condemned for railway purposes. *Huling* v. *Kaw Valley Railway, 130 U. S. 559.* On the other hand, in *Webster* v. *Reid, 11 How. 460,* under a statute of the then Territory of Iowa, actions were authorized against the owners of the "Half Breed Lands." The statute expressly provided that the designation "The owners of the Half Breed Lands lying in Lee county" should be a sufficient designation of the defendant in the suit. Judge M'Lean said: "By the act under which these suits were instituted no other designation of the defendants was required than owners of the Half Breed Lands lying in Lee county. These suits were not a proceeding *in rem* against the land but were *in personam* against the owners of it. Whether they all resided in the territory or not does not appear, nor is it a matter of any importance. No person is required to answer in a suit

on whom process has not been served or whose property has not been attached. In this case there was no personal notice nor an attachment, or other proceeding against the lands until after the judgments."

It may be said that this case is not unlike *Pennoyer* v. *Neff*, but we have an intimation, at least, that a proceeding *in personam* in respect of land was not, even before the passage of the fourteenth amendment, regarded as being due process of law if prosecuted against an indefinite class, though some of the members of that class resided within the jurisdiction.

If, under legislative sanction, an encumbrancer should, in a foreclosure case, instead of naming individuals, describe the defendants as "all persons claiming title to or interest in or lien upon the mortgaged property," and should allege that his was the prior lien, I should doubt very much whether a decree against such persons, described as a class and not as individuals, would be considered due process of law—would be regarded as entitled to full faith and credit—even if a notice of the proceeding were served upon those within the jurisdiction and published against those without. Its vice, if any, would be that it did not observe the distinction, as old as the common law itself, between a proceeding strictly *in rem,* where such notice would be good, and a proceeding *quasi in rem;* a proceeding against a person in respect of a *res,* in which latter, as Mr. Justice Field said in *Freeman* v. *Alderson, supra,* citation to the individual defendant is required. There are very good reasons for observing the distinction. If the defendant be personally named in the order or notice of publication there will be more likelihood of his receiving actual notice. The pleading will inform him of what is alleged against *him,* individually, and the decree will be definite and certain. The record will show who are bound and estopped by it.

In view of the course of adjudication in the supreme court, I think it may be regarded as certain that any law which sanctions a course of procedure like that authorized by section 10 of the Chancery act, will be allowed to operate only within narrow limits.

The question is whether section 10 may be applied to bills to quiet title. As applied to this class of bills it would seem to be a mode of supplementing the statute of limitations. It may be remarked that it fails to effect its object. It does not quiet the title. It does not extend to the case of the devisee of an heir or to the heir or devisee of a devisee. It does not extend to an assign of either an heir or devisee. Operating as an estoppel, the decree would, of course, be construed strictly. Again, if entered in the form prescribed, it is uncertain whom it binds. If the person, supposed to be dead, be in fact alive at the time of decree, then it would be nugatory as to the heirs; for *nemo est haeres viventis,* and as to devisees, for he then has none. On the other hand, if the person be dead, it does not bind him and resort must be had to evidence *aliunde* to ascertain whom it does bind.

Counsel has referred me to no case in which the precise question has been adjudicated, and I have found none. In the present condition of the authorities I ought not to pass upon a question of so much difficulty if the decision may be rested on another ground, and I think it may. The above discussion is not irrelevant, for it at least indicates that the section should not be extended to cases which it does not clearly reach.

It is only by a strained construction that section 10 can be deemed to have any application to the act to quiet titles. This is not because its language is not broad enough to include all suits that may be properly brought in this court. I think it is. But because it does not fit the act to quiet titles. The requirements of this act are such that unascertained defendants are excluded from its operation. The act to quiet titles enlarges the jurisdiction of the court of chancery (*Haley* v. *Goodheart, 13 Dick. Ch. Rep. 369; affirmed on appeal; American Dock Co.* v. *Trustees, 10 Stew. Eq. 272*) and cannot be itself extended beyond its terms. It relates either (1) to those who deny or dispute, or claim the title of one who is in peaceable possession of lands in this state; or (2) to those who are claimed or reputed to own the same or any interest therein, or to hold any lien or encumbrance thereon. Against these two

classes of persons, and against these only, is the statutory remedy given. Are unascertained heirs or devisees included within these classes? Before I discuss this question, I may be permitted to remark that section 10 is a little confusing. One clause of it seems to contemplate the possibility of the person named being alive. But if a decree should be taken against him on the assumption that he was a living person, no decree could be made against his heirs or devisees, for he would have none. I hardly think this court would venture to make a decree against a person shown to have no existence. Certainly, if made, it would not be *due* process of law. There would be, in fact, no *"reus."* If a decree is to be taken against the heirs and devisees at all, it must be because the ancestor or devisor is shown by proof, actual or presumptive, to have died. I do not suppose that a decree in the form following would be sanctioned by section 10, or would be due process of law. "If W. H. is alive, then we decree against him; if W. H. is dead intestate, then we decree against his heirs, if he has any. If W. H. has made a will and devised his property, and has died, as to which we know nothing, then we decree against his devisees." It is plain, then, taking the whole section together, that the decree which the statute intends shall be made under it is a decree against heirs and devisees. The name of the ancestor or devisor is brought in only for purposes of description or identification.

With these preliminary remarks, I come to the question whether the act to quiet title extends to heirs and devisees. This must be resolved by the provisions of the act itself.

In section 1 it provides that the bill shall not only describe the lands with certainty but shall *name* the person who claims or is claimed, or reputed to have title or interest. It is this person, brought in by his name, that is to be proceeded against. The same requirement of an individual, definitely ascertained, is carried through every section of the act. By section 2, in addition to the subpœna, a ticket is to be issued to *each* defendant, that is, to each defendant named in the bill, stating the object of the suit and requiring him to answer if he claims

title.   In this section the statute requires that to be done which Justice Field, in *Freeman* v. *Alderson,* said must be done in all cases which were not cases of proceedings strictly *in rem.* By section 3 no decree for costs is to be taken against any defendant who *suffers* a decree against him or who answers, disclaiming title.   By section 6 the final decree is "to fix and settle the rights of the parties in the land," a thing impossible if the heirs or devisees do not appear and show how the title has devolved upon them and in whom it subsists.   The act throughout contemplates a proceeding against definite individuals known to have an actual existence, not an indefinite class whose membership and whose very existence are unascertained. Thus construed, the act is in harmony with well established procedure, in a particular involving fundamental rights.   It was suggested that if section 10 of the Chancery act be not applicable to the act to quiet titles, then those sections of the Chancery act which provide for the case of absent defendants are not applicable.   There is no force in this contention. Where there are absent defendants, they are specially *named,* and the entire course of proceeding against them up to and including decree is the customary one.   They are brought into court by publication and by notice sent by mail, directed to them at the post-office nearest their residence, unless the same cannot be ascertained after diligent inquiry; and this the supreme court has said, in this very class of cases, is a reasonable method of imparting notice in a proceeding of this character.   *Arndt* v. *Griggs, supra.*

But there is another difficulty with complainant's case.   It has not been proved.   Section 10 of the Chancery act provides that "such action may proceed in all respects as if such person, or his heirs, devisees, or personal representatives had been duly named and described and served with process in said action and had failed to plead, answer or demur within the time allowed by law."   Section 28 of the Chancery act provides that if the defendant shall not file his plea, demurrer or answer within the time limited, the bill of complaint shall be taken as confessed and such decree made as by the court shall be

Hill *v.* Henry.

deemed equitable; or the chancellor, in his discretion, may order the complainant to produce documents and witnesses to prove the allegation of his bill. No decree *pro confesso* was made in this case. It was referred to a vice-chancellor to hear the same and to report what decree should be made. It is a familiar rule that no decree shall be made unless warranted by the allegations of the bill (*Reynolds* v. *Stockton, 16 Stew. Eq. 213; 140 U. S. 254*) and unless founded on evidence supporting those allegations. There is nothing in section 10 to modify this rule and it cannot be dispensed with in favor of this proceeding.

In the first place, I have already shown that no decree can be made against William Henry, because the proof is that he has been dead over fifty years. In the second place, there is no proof that William Henry made a devise of the right in controversy. Certainly, we cannot infer that he did without proof. No devise being shown, there is nothing on which to base a decree against devisees. If any decree can be made, it can only be made against "the heirs" of William Henry, and such a decree would rest not upon any proof that William Henry left heirs, lineal or collateral (for there is no proof on the subject), but on a presumption that he did so. Whether such a presumption ought to be made, I need not consider, because if it may, the proof must go further. It must show either that these heirs have disputed or denied complainant's title, or that they claim the land, or some interest in, or lien upon it; and of this there is no evidence; or it must show that they are reputed to have some title, interest or lien; and of this, too, there is no evidence; or it must show that they are "claimed" to have some title or interest or lien. As to this, the proof is that Bliss directed his solicitor to have a search made upon the property, and that the searcher found the agreement of 1810 on the record, and the solicitor thereupon advised his client not to take title until the cloud arising from the agreement should be removed.

The words "to claim" are sometimes incorrectly used, as synonymous with "to think," "to insist." Their proper, and I

11

take it their statutory, meaning is "to challenge as a right," "to demand as due." There is no proof that the solicitor of Mr. Bliss, or anyone else, made any *such* claim on behalf of the heirs. A mere suggestion that possibly someone might make a claim, without any belief on the part of the person making it that such a claim would be good or maintainable, does not satisfy the requirements of the act. It was never intended that suggestion alone should subject other persons to the annoyance of a law suit.

Either on the ground, therefore, that the provisions of section 10 have no application to the act to quiet titles, or on the ground that the proof does not support the bill, I think it should be dismissed as against William Henry and as against his heirs and devisees.