### BLAKE v. ZITTROUER et al.

(District Court, S. D. Florida. August 30, 1924.)

No. 127.

1. **Process** ⊜92—**Bill alleging defendant's residence unknown held sufficient to support service by publication.**

Bill stating that defendant's "residence is unknown," without alleging nonresidence, *held* sufficient to support service by publication, under Rev. Gen. St. Fla. 1920, §§ 3111, 3112, as amended, requiring bill or affidavit to allege either belief as to nonresidence "or" "that his residence is unknown."

2. **Process** ⊜104—**Publication notice held sufficient under Florida statutes.**

Published notice to defendant if living, and if dead to those claiming under him, to "appear to the bill filed in this cause on the 5th day of September, A. D. 1921," *held* sufficient, under Rev. Gen. St. Fla. 1920, §§ 3111, 3112; contention that the named date referred to date of the bill, instead of date of return, being without merit.

3. **Constitutional law** ⊜309(2)—**Process** ⊜85—**Florida statutes providing for service by publication are constitutional.**

Rev. Gen. St. Fla. 1920, §§ 3111, 3112, providing for service by publication, are constitutional as against objection that they fail to require reasonable diligence to locate defendant, and thereby deny "due process," required by Const. U. S. Amend. 14.

4. **Judgment** ⊜828(1)—**Decree of Florida court, quieting title, held binding on federal court.**

Decree in Florida court, quieting title to land and restraining defendant from asserting any claim or title, though defendant was served by publication only, was valid and binding on the federal court.

5. **Judgment** ⊜570(4)—**Order of Florida court striking bill to quiet title was "final judgment," res judicata in federal court.**

Order of a Florida court striking from its files·a bill of complaint to quiet title *held* a "final judgment" of a court of competent jurisdiction as to .questions therein sought to be raised, and res judicata in subsequent·suit in

federal court to set aside prior decree quieting title against complainant.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Final Decree or Judgment.]

In Equity. Bill to set aside a decree by William H. Blake against A. H. Zittrouer and others. Decree for defendants.

Johnson & McIlvaine, of Jacksonville, Fla., for complainant.

Massey, Warlow & Carpenter, of Orlando, Fla., for defendants.

JONES, District Judge. From the pleadings in this case it appears that the complainant, William H. Blake, a nonresident of the state of Florida, had conveyed to him by warranty deed in the year 1887 a certain 40 acres of land in Orange county, Fla., which deed of conveyance was duly recorded in the public records of said county under date of July 8, 1887; that thereafter, in the year 1903, said land was sold to the state of Florida for nonpayment of taxes for the year 1902; that a tax certificate as to said sale was duly issued, and by mesne assignments to Overstreet, Entzminger & Co. (a copartnership) was made the basis for application by said Overstreet, Entzminger & Co. for a tax deed to said land as provided for in the statutes of the state of Florida; that said tax deed was duly issued under date of July 31, 1905, and recorded in the public records of said Orange county, Fla., on said July 31, 1905; that the grantees in said tax deed subsequently conveyed said land to Overstreet Turpentine Company, a corporation, which corporation on June 30, 1921, exhibited its sworn bill of complaint in the circuit court of Florida in and for Orange county, praying that its title to said 40 acres of land, acquired as above set forth, be quieted, and that said William H. Blake and all persons claiming by, through, or under him, and all persons claiming an interest in said lands, be "perpetually enjoined and restrained from asserting title under their respective interests or claims against the complainant (Overstreet Turpentine Company) and those claiming under it"; that service was had upon said William H. Blake, a defendant in said suit, by publication, based upon certain allegations in said bill contained; that said Willim H. Blake failed to appear to or answer said bill, and a decree pro confesso was entered against him, and a final decree granting the relief prayed for in the bill of complaint was filed and recorded under date of November 14, 1921; that on February 24, 1924, the said William

1 F. (2d)—32

H. Blake filed his bill of complaint against the defendants herein in the circuit court of Florida for Orange county, averring that the decree in the original cause was void for want of jurisdiction of his person, and praying that said decree be set aside as a cloud upon his title to said 40 acres; that said bill of complaint so filed was, on March 28, 1924, upon motion of defendants therein, stricken from the files.

This bill was filed in this court on April 14, 1924, and seeks to set aside the decree of the circuit court of Orange county, Fla., decreeing the ownership of said land to be in Overstreet Turpentine Company, and restraining this complainant from asserting any title or claim in and to said land against Overstreet Turpentine Compny and those claiming under it, and prays that said cause be reopened and this complainant granted leave to defend said suit. It is also sought to have this court declare void and set aside the tax deed to Overstreet, Entzminger & Co. and certain deeds thereafter, to adjudge them to be clouds upon the title of Blake, and that he be decreed to be the owner of said land free and clear from said several clouds. The jurisdiction of this court is based upon diversity of citizenship, the value of the land in controversy, and the allegation that the orders and decrees sought to be vacated were made in violation of the Fourteenth Amendment to the Constitution of the United States, in that they deprive complainant of his property without due process of law.

The defendants have answered, and in the answer have interposed certain defenses in abatement or in bar, which they ask to have heard and disposed of before the trial of the principal case, as is provided for in equity rule 29. These defenses are:

(1) That the value of the matter in controversy does not exceed in amount the sum of $3,000, exclusive of interest and costs.

(2) That the matters and things in the bill alleged have been adjudicated by a court of competent jurisdiction, and that the decree of the circuit court of Orange county, Fla., wherein and whereby the title to the land in question was decreed to be in Overstreet Turpentine Company, and restraining the complainant herein from asserting title or claim thereto is conclusive.

(3) That the decree of the said court striking from its files the bill of this complainant to set aside the former decree and reopen the cause is final, and makes the questions herein res adjudicata.

In compliance with the request that these matters be heard before the trial of the prin-

cipal case, the court appointed an examiner to take testimony under these issues, and the cause now comes on to be heard upon the coming in of the examiner's report and the preliminary questions of law raised by the answer. At the hearing before the examiner the defendants admitted that the value of the land in question exceeds $3,000, which settles the first question.

[1] Under the second question, relative to the jurisdiction of the circuit court of Orange county, Fla., in the cause set up in the pleadings, in which the title to the land in question was decreed to be in Overstreet Turpentine Company, and Blake, the complainant in this case, enjoined from asserting title to the land in controversy, the complainant takes the position that no proper service was had upon Blake, and therefore the decree is not binding upon him. He contends that the Florida statutes authorizing service upon nonresident or unknown defendants in equity causes (sections 3111 and 3112 as amended) were not complied with in this case, and, if complied with, the service is not effective, for the reason that said statutes are unconstitutional, as in violation of the Fourteenth Amendment to the Constitution of the United States.

It is contended by complainant that, to comply with section 3111 above, the affidavit or sworn bill should state the belief "that the defendant is a resident of a state and county other than this state," and also allege "that his residence is unknown," and that it is not sufficient to aver, as was done in the sworn bill under consideration, simply that defendant's "residence is unknown." Paragraph 1 of section 3111 reads as follows:

"Whenever the complainant, his agent or attorney, shall state in a sworn bill or affidavit, duly filed, the belief of the affiant that the defendant is a resident of a State or country other than this State, specifying as particularly as may be known to affiant such residence, or that his residence is unknown, or that, if a resident, he has been absent more than sixty days next preceding the application for the order of publication, and that there is no person in the state the service of a subpœna upon whom would bind such defendant, or that he conceals himself so that the process cannot be served upon him, and further states the belief of the affiant as to the age of the defendant being over or under 21 years, or that his age is unknown, the judge or clerk of the court in which such bill shall have been filed shall make an order against the defendant requir-

ing him to appear to the bill upon a day to be fixed by the order, not less than thirty nor more than fifty days from the time of the making of the order, if he be stated therein to be a resident of the United States, and not less than fifty nor more than eighty days if he be stated to be a nonresident of the United States, or if his residence be stated as unknown. For the purpose of this action, the insular possessions of the United States shall be regarded as foreign countries."

The statute uses the disjunctive "or," and it is clear to my mind that the legislative intent is that affiant shall either state the belief that defendant is a resident of another state or country, specifying such residence as particularly as is known, or shall state "that his residence is unknown." The latter averment is made in this bill, and is sufficient; other requirements of the statute having been complied with.

[2] It is further contended that the service is bad, in that the notice as published is ambiguous and contains no fixed return date. The notice is addressed to "Wm. H. Blake if living, and if dead to persons claiming interest under Wm. H. Blake, deceased," and contains the following: "You and each of you are hereby required to appear to the bill filed in this cause on the 5th day of September, A. D. 1921. * * * Witness my hand and the seal of the said circuit court this 30th day of June, A. D. 1921."

The proof of publication shows this notice was published eight times, beginning July 5, 1921, and ending August 23, 1921. The contention that the date in the notice, "5th day of September, A. D. 1921," refers to the date the bill was filed, is, in my opinion, without merit, as is also the contention that section 3111 was not complied with. The court is also of the opinion that the provisions of section 3112 as amended were complied with, and that proper service was had under said section.

[3] It is contended by complainant that these Florida statutes are unconstitutional, for the reason that they do not require acts of reasonable diligence to locate the defendant, and therefore do not afford to the defendant that "due process of law" to which he is entitled under the Fourteenth Amendment to the Constitution of the United States. This same question has been previously raised in the Supreme Court of the United States, and similar state statutes have been upheld as constitutional by that court. A statute of the state of Kansas, entitled

"Appropriation of Lands for the Use of Railway and Other Corporations" (Comp. Laws Kan. 1885, p. 224, art. 9, c. 23), provides that upon application the board of county commissioners shall lay off a route for a proposed railway and proceed to appraise the value and assess the damages to the interest of each of the owners of the land so taken. One section of this law provides that, before the county commissioners shall proceed to lay off any railroad route, notice of the time when same shall be commenced shall be given by publication, 30 days before the time fixed, in some newspaper published in the county. A nonresident owner of lands taken under this statute attacked same upon the ground that the statute was void, as authorizing the taking of property without due process of law. The Supreme Court of the United States, in passing upon this objection, says, in Huling v. Kaw Valley Railway & Improvement Co., 130 U. S. 559, 9 Sup. Ct. 603, 32 L. Ed. 1045:

"In proceedings commenced under a state statute for condemnation of land for a railroad, a published notice in compliance with the terms of the statute, specifying the section, township, and range, county and state, in which it is proposed to locate the railroad, is sufficient notice to a nonresident owner of land therein, and such publication is 'due process of law,' as applied to such a case."

Further on in the opinion the court on page 564 (9 Sup. Ct. 605) says:

"It is therefore the duty of the owner of real estate, who is a nonresident, to take measures that in some way he shall be represented when his property is called into requisition; and if he fails to do this, and fails to get notice by the ordinary publications which have usually been required in such cases, it is his misfortune, and he must abide the consequences. Such publication is 'due process of law' as applied to this class of cases. Harvey v. Tyler, 2 Wall. 328; Secombe v. Railroad Co., 23 Wall. 108; Pennoyer v. Neff, 95 U. S. 714, 722, 743, 744; Hagar v. Reclamation District, 111 U. S. 701; McMillen v. Anderson, 95 U. S. 37; Davidson v. New Orleans, 96 U. S. 97, 105; Boom Co. v. Patterson, 98 U. S. 403, 406."

The statute here upheld contains no provision for ascertaining names and addresses of defendants, and is much broader than the Florida statute under consideration.

Even in the case of American Land Co. v. Zeiss, 219 U. S. 47, 31 Sup. Ct. 200, 55 L. Ed. 97, depended upon by complainant to sustain his attack upon the validity of the Florida statute, the right of a state to fix the procedure in regard to quieting title to real estate within such state is upheld. The court there says:

"The Fourteenth Amendment does not operate to deprive the states of their lawful power; the due process clause of that amendment only restrains such exertions of power as are so unreasonable and unjust as to impair or destroy fundamental rights, and therefore not really within lawful power of the state. * * * It being within the power of the state to determine how title to real estate shall be proved, it is also within the legislative competency of that state to establish the method of procedure."

See, also, Arndt v. Griggs, 134 U. S. 316, 10 Sup. Ct. 557, 33 L. Ed. 918; Grannis v. Ordean, 234 U. S. 385, 34 Sup. Ct. 779, 58 L. Ed. 1363; Virginia & West Virginia Coal Co. v. Charles (D. C.) 251 Fed. 83.

The above cases all uphold state statutes for service against nonresident defendants by publication, which statutes are not only similar to the Florida statutes, but in some instances are even broader. It therefore appears that the attack upon the constitutionality of the Florida statutes is not well founded.

[4] One further contention is made by complainant, and that is that the "proceeding [in the Florida state court] was in personam, and does not prevent suit in United States court to try the title." This contention is based on the ruling in Hart v. Sansom, 110 U. S. 151, 3 Sup. Ct. 586, 28 L. Ed. 101. The Supreme Court, however, in Arndt v. Griggs, supra, explains the case of Hart v. Sansom, holds that a state by statute may provide "that the title to real estate within its limits shall be settled and determined by a suit in which the defendant, being a nonresident, is brought into court by publication," and says: "Nothing inconsistent with this doctrine was decided in Hart v. Sansom."

The facts in the Arndt Case are similar to those in the instant case. Title to certain lands in Nebraska had been acquired by a tax deed, and a suit brought in the state court to quiet said title in the holder under the tax deed, and against nonresident holders of the title before the tax title was acquired, and upon whom service was had by publication. A decree was entered in favor of plaintiff, quieting his title to said lands. Arndt and other grantees from the defendants in the case in the state court brought ejectment in the federal court against Griggs

and others, grantees from the plaintiff in the original suit, whose title had been quieted by decree of the the state court as above.

The case came before the Supreme Court of the United States upon a certificate from the lower court, submitting the question "whether the decree in such proceedings to quiet title, rendered in accordance with the provisions of the Nebraska statute, upon service duly authorized by them, was valid and operated to quiet the title in the plaintiff therein. In other words, has a state the power to provide by statute that the title to real estate within its limits shall be settled and determined by a suit in which the defendant, being a nonresident, is brought into court only by publication?" Arndt v. Griggs, 134 U. S. 319, 10 Sup. Ct. 558, 33 L. Ed. 918.

After discussing the matter thoroughly, citing numerous cases from the state courts and the cases of Pennoyer v. Neff, 95 U. S. 714, 24 L Ed. 565, Huling v. Kaw Valley Railway, 130 U. S. 559, 9 Sup. Ct. 603, 32 L. Ed. 1045, and Mellen v. Moline Iron Works, 131 U. S. 352, 9 Sup. Ct. 781, 33 L. Ed. 178, the court answered the question in the affirmative, holding that the decree in the state court quieting the title to the land in controversy was valid and binding and such statutes recognized in the federal courts, citing Holland v. Challen, 110 U. S. 15, 3 Sup. Ct. 495, 28 L. Ed. 52. It seems to me this decision is absolutely conclusive as to the validity of the decree rendered in the circuit court of Orange county, Fla., quieting the title to the land in controversy and restraining this complainant from asserting any claim or title therein.

[5] It is unnecessary to enter into any lengthy discussion of the third question as to the effect of the order of the circuit court of Orange county, Fla., striking from the records the bill filed therein by this complainant under date of February 25, 1924. Suffice it to say that in my opinion the order made and entered in said case on March 28, 1924, is a final decree or judgment, and renders the matters sought to be passed upon by this court res adjudicata. "Where it appears that a question was distinctly put in issue, and the parties presented, or had an opportunity to present, their evidence, and the question was decided by a court of competent jurisdiction, private right and public welfare both demand that the question so adjudicated shall, except in direct proceedings for review, be considered as finally settled and conclusive upon the parties." Fay-

erweather v. Ritch, 195 U. S. 276, 25 Sup. Ct. 58, 49 L. Ed. 193.

Answering the three questions submitted by the answer, and upon which testimony has been taken and considered, the court finds:

(1) That the value of the property in controversy is in excess of $3,000, exclusive of interest and costs.

(2) That the decree of the circuit court of Orange county, Fla., rendered in the suit of Overstreet Turpentine Company v. Wm. H. Blake et al., referred to in the pleadings in this case, wherein and whereby the said Overstreet Turpentine Company is adjudged and decreed to be the owner of the lands in controversy, and whereby the complainant herein, Wm. H. Blake, is "perpetually enjoined and restrained from asserting title" to said lands, is a valid, binding decree rendered by a court having jurisdiction therein.

(3) That the order of the circuit court of Orange county, Fla., dated March 28, 1924, striking from its files the bill of complaint filed therein by Wm. H. Blake, the complainant herein, is a final judgment of a court of competent jurisdiction as to questions therein sought to be raised, and that said questions are in this suit res adjudicata.