Simons, J.
(dissenting). Under the provisions of the Nassau County Administrative Code (Code), property may not be sold by the County for nonpayment of taxes until expiration of a two-year redemption period. The Code also provides that property owners, and certain other interested parties, must receive actual notice at least three months before expiration of the redemption period that a deed will issue unless the taxes are paid. The majority holds such notice is inadequate; that the Code must provide actual notice to the property owner when the tax lien is sold, at the beginning of the two-year period. Accordingly, it holds that Nassau County has *179 deprived these property owners of their property without due process of law under the Fourteenth Amendment to the United States Constitution. Because this holding is neither compelled by the United States Supreme Court’s decision in Mennonite Bd. of Missions v Adams (462 US 791), on which the majority relies, nor supported by our precedents, I dissent.
Since the majority has chosen to emphasize the impact of the Code provisions on these individual litigants it should be noted that neither has ever denied that they received their tax bills during the two years in question or claimed that they paid the taxes due and neither has suggested that they were unaware of the consequences of failing to do so. Indeed, petitioner McCann had some familiarity with tax proceedings because on three prior occasions she failed to pay her taxes, experienced the sale of tax liens on her premises and was forced to redeem the property before a deed issued. Moreover, there is evidence in the record which would indicate that she was sent actual notice of the tax lien sale in this case, the same notice which the majority says was required, and thus that she should not be entitled to relief even if the rule adopted by the majority is applied to her. Finally, even after petitioners received actual notice to redeem, more than four months elapsed before a deed was issued for the Rinaldo property and more than nine months elapsed before a deed was issued for the McCann property. Petitioners did nothing during that time to avoid forfeiture and waited several months more before instituting these proceedings.
Turning to the merits, I have no disagreement with the majority’s holding that Botens v Aronauer (32 NY2d 243, appeal dismissed 414 US 1059) has been implicitly overruled by Mennonite Bd. of Missions v Adams (462 US 791, supra) and Congregation Yetev Lev D’Satmar v County of Sullivan (59 NY2d 418). To the extent that Botens holds that a property owner need not receive actual notice before transfer of his property, it can no longer be followed. Neither Mennonite nor Congregation Yetev Lev D’Satmar, however, compels the conclusion that actual notice must be given to a property owner prior to the sale of a tax lien for the owners property. What Mennonite does hold is that a property owner must receive actual notice before his rights are "significantly affected” (id., at 798).
The question is then at what point were the property interests of these petitioners "significantly affected” by the *180 County’s actions. Under the circumstances in the Mennonite case that occurred when the tax lien was sold. Therefore, the court required actual notice before the sale. These cases differ substantially and in my view the taxpayers’ property interest was not significantly affected until the period of redemption expired. Accordingly, constitutional due process required actual notice only before that date. Whether the notice was sufficient because sent only three months in advance of expiration is another question, one best answered by the Legislature absent clear abuse, but under the facts of these cases petitioners certainly have no basis to complain.
Analysis starts with the Mennonite case. That action was brought by a mortgagee of premises in default for unpaid taxes which was not notified of the tax proceedings, other than by publication, before expiration of the two-year redemption period. It did not receive the tax bills on the property, as did the petitioners in these cases, and it had no reason to presume that the owner was not paying the taxes on the real property because even after the tax lien was sold the property owner continued to make the mortgage payments. Two questions were before the Supreme Court: the first was whether the Indiana statutes conformed with due process insofar as they failed to afford mortgagees with actual notice prior to the sale of the tax lien. The second was whether the Indiana statutes were unconstitutional insofar as they failed to give a mortgagee notice prior to the expiration of the redemption period. The Supreme Court answered the first question, thus rendering the second question academic (see, 462 US, at 800, n 6, supra). For purposes of this litigation, however, it is important to explain why the Supreme Court decided as it did.
Under the Indiana’s statutory scheme some of the incidents of ownership are transferred at the time of the tax sale. Thus, the successful bidder is permitted to record the equivalent of a lis pendens (Indiana Code § 6-1.1-24-1), the statute refers to sale of the property rather than sale of a lien (Indiana Code § 6-1.1-24-9 [a]) and it specifies that the certificate of sale delivered to the successful bidder must contain a description of the property and the name of the "former owner” (Indiana Code § 6-1.1-24-9 [a] [2]; § 6-1.1-25-6). Moreover, under Indiana law, the Statute, of Limitations for actions contesting the tax proceedings runs from the date of the certificate of sale given immediately after the tax sale (Indiana Code § 6-1.1-24-9 [a]; § 6-1.1-24-11 [b]). Indeed, there appears to be authority that the purchaser, by acquiring the certificate of sale in an *181 Indiana tax sale, is entitled to immediate possession of the premises and may commence proceedings to obtain it (Ethel v Batchelder, 90 Ind 520; Barton v McWhinney, 85 Ind 481).
The most significant factor in the Mennonite case, however, was that under the Indiana statutes before the court, tax liens were sold at public auction to the bidder willing to pay the highest price. Because the successful bid constituted a prior claim on the property, the consequence of a tax lien sale was the immediate subordination of the mortgagee’s interest and, if the bid price substantially exceeded the tax and penalties due, the sale might result in diminution or even extinguishment of the mortgagee’s interest (Indiana Code § 6-1.1-24-9 [a]; § 6-1.1-24-9 [b]; § 6-1.1-25-6 [a] [7]). Thus, the mortgagee’s security for its loan was immediately and drastically affected by the sale under the Indiana statute because redemption required not only the payment of taxes and penalties, but potentially of some additional sum paid by the successful bidder which, depending on the amount, might adversely affect the mortgagee’s security interest in the property. Thus, it is quite understandable that the Supreme Court found in Mennonite that the mortgagee’s rights were "significantly affected” by sale of the tax lien and required that mortgagees be afforded notice and the opportunity to protect their rights before tax lien sales took place.
The consequences of the sales of tax liens in these cases are quite different. The Nassau County Administrative Code, unlike the Indiana statute, makes clear that all incidents of ownership remain with the taxpayer until the redemption period expires and that a purchaser at a tax sale acquires no more than a lien for the delinquent taxes, penalties and interest. Thus, after a tax lien is sold in Nassau County title unquestionably remains with the owner until expiration of the redemption period, no lis pendens is filed against the property before or after the sale and the certificate of sale does not give the lien buyer any claim to ownership or possession (Nassau County Administrative Code § 5-52.0). Moreover, the Statute of Limitations does not commence to run until the tax deed, issued by the County Treasurer after the redemption rights have expired, has been recorded (Nassau County Administrative Code § 5-54.0 [b] [3]).
Most importantly, however, under the Nassau County Administrative Code the successful bid is measured by the lowest rate of interest the bidder is willing to receive for paying the *182 delinquent taxes, not the highest price he is willing to pay. The lien for delinquent taxes may be repurchased and satisfied by payment of the taxes plus penalties and interest due to the County to the date of the tax lien sale. No greater amount is ever included in the tax lien sale price in Nassau County (Nassau County Administrative Code §§ 5-33.0, 5-35.0 [a] [2], [3]; § 5-36.0 [c]). Additional penalties, computed by the interest bid, are imposed after the lien is sold, however, to compensate the bidder for the use of his money during the redemption period (Code § 5-40.0). The owner may redeem the property by paying the accumulated taxes, interest and penalties, the costs of the sale and the interest penalty due the bidder (Code § 5.50).
In sum, the sale of the tax lien by Nassau County starts the time for redemption running, requires the taxpayer to reimburse the County for the costs of the tax lien sale and adds interest and penalties. The effect of the tax sale has little more effect on the owner’s interest than increasing the interest and penalties due because of the passage of time and adding a penalty in the form of interest to the successful bidder for the use of the bidder’s money to satisfy the taxes past due. These charges do not jeopardize the owner’s title or possession any more than adding interest for late payment of taxes 30 days after the payments are first due, except in amount, and no one would seriously contend actual notice must be given to the taxpayer before that is done. The lien purchaser does not acquire anything at the sale which prevents the owner, by his own act, from fully using and exploiting his property if only the taxes are paid. Under the Indiana statutory scheme before the court in Mennonite (supra), by contrast, the mortgagee might pay the taxes in full with interest and penalties, even though it was not required to, and still not recover its security interest in the property. Thus, the effect of a tax sale in Nassau County on an owner’s property rights are substantially different from the consequences the Indiana statutes imposed on the mortgagee which caused the Supreme Court to determine in Mennonite that the tax sale triggered the mortgagee’s due process right to notice.
Nevertheless, petitioners and the majority contend that title is significantly affected at the tax sale because the cost of redemption is increased after the tax lien is sold. They argue the mere cumulation of interest and penalties, legally imposed, is enough to significantly affect the taxpayer’s interest in his property for due process purposes. In response, it should *183 be noted first that it is not clear that the issue is properly before us. Petitioners are not claiming that they failed to redeem their properties because of the increased sums that they had to pay as a result of the sale of the lien. They seek only to recover title to the property, even though they acknowledge they were afforded actual notice by certified mail more than three months prior to the date when their property interest could be extinguished. All that they lost because actual notice was given at a later, rather than an earlier, date was money in the form of increased tax penalties. Yet they cite to no authority which requires personal notice prior to an event which is followed by an increase in monetary penalties (contra, Township of Montville v Block 69, Lot 10, 74 NJ 1, 7-8, 376 A2d 909, 912 ["applicability of the Due Process Clause is not affected by the municipality’s sale of the property for unpaid taxes and issuance of a certificate to the purchaser”; actual notice need only be provided when the owner’s redemption period will expire]).
Moreover, the increased costs that the sale of the lien imposed on the taxpayers should have come as no surprise. Our decisions both before and after Mennonite (supra) have consistently adhered to the principle that an owner of real property is charged with knowledge of the statutory provisions affecting the control or disposition of his or her property (Sheehan v County of Suffolk, 67 NY2d 52, 58, cert denied sub nom. MacKechnie v County of Sullivan, 478 US 1006; Congregation Yetev Lev D’Satmar v County of Sullivan, 59 NY2d 418, 423, supra; see also, United States v Locke, 471 US 84, 108; Texaco, Inc. v Short, 454 US 516, 531). When, as here, property owners are afforded both notice and an opportunity to be heard with respect to the assessment of their property and the imposition of taxes on it and actual notice prior to final expiration of the redemption period, individual notice of an increased interest and penalties is not required. Taxpayers are under an obligation to pay their taxes and they are presumed to know the consequences of nonpayment. While other historical justifications for sustaining the adequacy of notice by publication are no longer recognized* the *184 principle that a landowner, like any other citizen, is presumed to know the law retains its continued validity after Mennonite and Mullane (see, United States v Locke, supra, at 108, citing favorably North Laramie Land Co. v Hoffman, 268 US 276, 283).
In sum, it is the issuance of the deed to the lien purchaser which significantly affects the owner’s interest in his property under the Code and the Code requires that the owner receive actual notice of that future event. The sale of the tax lien is neither "the event that moves the Sword of Damocles directly over the head of a property owner”, nor is it the sole "condition precedent” to the transfer of title as the majority opinion suggests (majority opn, at 176). Rather, the actual condition precedent to the transfer of title is the filing by the lien purchaser of affidavits proving that he or she served the property owner and all other interested parties notifying them of the need to redeem the property within three months (Nassau County Administrative Code § 5-51.0 [e]; § 5-53.0 [4]). It is then that the provisions of the Code set in motion procedures which lead inexorably to the loss of title unless the property is redeemed and it is then that petitioners’ property interests were significantly affected (Mennonite Bd. of Missions v Adams, supra, at 798).
Finally, the majority suggest that the three-month notice prescribed by the Nassau County Administrative Code will not withstand constitutional analysis because the time period is too short.
The purpose of the notice, of course, is to give owners an opportunity to act, either by paying the delinquent taxes or selling the property subject to the tax lien, to protect their equity. What is reasonable for that purpose is usually a legislative policy determination not subject to overcall by the courts unless clearly erroneous. In reviewing the legislative determination, it must be noted that the period of redemption is two years, not three months. In no event may title pass before the two years has expired and notwithstanding the sale of the lien, the taxpayer may redeem his property at any time during the two years before title is transferred by satisfying the tax lien. Furthermore, before personal notice is made several things occur which bring home the fact of delinquency to the taxpayer. There is the knowledge of universal tax liability imputed to owners of real property (see, Sheehan v *185 County of Suffolk, 67 NY2d 52, cert denied sub nom. MacKechnie v County of Sullivan, 478 US 1006, supra; Congregation Yetev Lev D’Satmar v County of Sullivan, 59 NY2d 418, supra), annual tax bills are mailed to owners indicating nonpayment of past taxes, and the fact that delinquency is published by notice of the sales of tax liens in the newspaper. Moreover, the shorter time specified between notice and the expiration of the redemption period may be justified because the sums of money necessary for redemption under the Nassau County bidding scheme are relatively small.
Accordingly, I must dissent and vote to affirm the order of the Appellate Division.
Chief Judge Wachtler and Judges Alexander, Titone and Bellacosa concur with Judge Kaye; Judge Simons dissents and votes to affirm in a separate opinion in which Judge Hancock, Jr., concurs.
In each case: Order reversed, with costs, proceeding converted to a declaratory judgment action and judgment granted in favor of petitioners in accordance with the opinion herein.

 For example neither the "caretaker” theory (see, e.g., Huling v Kaw Val. Ry., 130 US 559, 563-564) nor the "in rem” justification (see, Ballard v Hunter, 204 US 241, 258) for holding that notice by publication is constitutionally valid retains validity after the Supreme Court’s decisions in International Shoe Co. v Washington (326 US 310) and Shaffer v Heitner (433 US 186). (See generally, Mennonite Bd. of Missions v Adams, 462 US 791, 796-797, n 3.)