## BEKINS et al. v. COMPTON–DELEVAN IRR. DIST.

### No. 10934.

Circuit Court of Appeals, Ninth Circuit.

July 17, 1945.

Rehearing Denied Aug. 20, 1945.

W. Coburn Cook, of Turlock, Cal., for appellants.

Peters & Peters, of Chico, Cal., for appellee.

Before GARRECHT, MATHEWS, and HEALY, Circuit Judges.

MATHEWS, Circuit Judge.

On December 13, 1941, appellee, Compton-Delevan Irrigation District, filed a petion under chapter 9 [1] (§§ 81–84) of the Bankruptcy Act, 11 U.S.C.A. §§ 401–404. Appellee is a taxing agency, namely, an irrigation district organized and created under the laws of California for the purpose of constructing, improving, maintaining and operating certain improvements and projects devoted chiefly to the improvement of lands within its boundaries.[2] The petition was filed with the District Court of the United States for the Northern District of California, that being the court within whose territorial jurisdiction appellee is located.[3]

Appellee, at the time of filing the petition, had outstanding $384,000 of bonds (384 bonds of the face value of $1,000 each), of which $11,000 (11 bonds of the face value of $1,000 each) were owned and held by appellants, Milo W. Bekins and Reed J. Bekins, as trustees under the last will of Martin Bekins, deceased. The 11 bonds owned and held by appellants were Nos. 409, 410, 411, 413, 414, 415, R115, R136, R137, R138 and R139.

The petition stated that appellee was insolvent and unable to meet its debts as they matured; that it desired to effect a plan for the composition of its debts; that a plan of composition had been prepared and was filed and submitted with the petition; and that creditors of appellee owning not less than 51% in amount of the securities affected by the plan (excluding securities owned, held or controlled by appellee) had accepted it in writing.[4]

The plan was that appellee would borrow from the Reconstruction Finance Corporation, hereafter called the R.F.C., $76,800 (20% of $384,000) and, to secure the loan, would issue and deliver to the R.F.C., $76,800 of new bonds and, with the proceeds of the loan, would retire its old bonds by paying to the holders of such bonds 20% of the principal amount thereof. Thus, if the plan had been consummated, appellants would have received for the 11 bonds owned and held by them $2,200 (20% of $11,000).

There was filed with the petition what purported to be a list of all known creditors of appellee, together with their addresses, and a description of their securities.[5] The list did not contain the name or address of Milo W. Bekins. It did contain the name and address of Reed J. Bekins and a description of the 11 bonds mentioned above —Nos. 409, 410, 411, 413, 414, 415, R115, R136, R137, R138 and R139. It described the 11 bonds as belonging to Reed J. Bekins. It should have described them as belonging to both appellants (Milo W. Bekins and Reed J. Bekins).

Upon the filing of the petition, a judge of the District Court entered an order approving it as properly filed under Chapter 9.[6] Thereafter, on December 19, 1941, the judge entered an order fixing a time and place—February 24, 1942, at Sacramento, California—for a hearing on the petition, directing that notice be given to appellee's creditors, and prescribing the form of the notice.[7] Notice was given as directed. Creditors were thereby required to file proof of their claims on or before February 24, 1942.[8]

---

[1] Formerly chapter 10. See 50 Stat. 653–659, 52 Stat. 939.

[2] See §§ 81 and 82 of the Bankruptcy Act, 11 U.S.C.A. §§ 401, 402.

[3] See § 83, sub. a, of the Bankruptcy Act, 11 U.S.C.A. § 403, sub. a.

[4] See § 83, sub. a, of the Bankruptcy Act, 11 U.S.C.A. § 403, sub. a.

[5] See § 83, sub. a, of the Bankruptcy Act, 11 U.S.C.A. § 403, sub. a.

[6] See § 83, sub. a, of the Bankruptcy Act, 11 U.S.C.A. § 403, sub. a.

[7] See § 83, sub. b, of the Bankruptcy Act, 11 U.S.C.A. § 403, sub. b.

[8] See § 83, sub. b, of the Bankruptcy Act, 11 U.S.C.A. § 403, sub. b.

On January 26, 1942, appellants filed proof of a claim for $11,000, with interest. The claim was founded on and evidenced by the 11 bonds owned and held by appellants. The proof (a verified statement of the claim) described the 11 bonds and gave their serial numbers—409, 410, 411, 413, 414, 415, R115, R136, R137, R138 and R139.

A hearing was had on February 24, 1942. The judge found the facts to be as stated in the petition and, on March 11, 1942, entered an interlocutory decree confirming the plan.[9] The interlocutory decree named The Merchants National Bank of Sacramento as disbursing agent; required appellee to deposit with the disbursing agent the sum necessary to pay to the holders of appellee's outstanding bonds 20% of the principal amount thereof; required the holders of such bonds to deposit them, with unpaid interest coupons attached, with the disbursing agent before receiving payment; provided that if any bond was so deposited with unpaid interest coupons missing, there should be deducted from the amount to be paid for such bond the full face value of each missing coupon; and provided:

"That in the event any of the old bonds and interest coupons are not surrendered to the disbursing agent within thirty days after receipt by such agent of the money with which to retire the same, then the proportionate sum to which the holders thereof may be entitled under the plan of composition, and terms of this decree, shall be paid by the disbursing agent to the clerk of this [district] court as registrar, and thereafter paid by him to the holders of such bonds * * *

"Upon being advised by petitioner [appellee] that the funds with which to retire the outstanding old bonds have been deposited with the disbursing agent, the clerk of this court shall cause to be published in the Wall Street Journal (Pacific Coast Edition) and the Colusa Sun-Herald, newspapers published in San Francisco and Colusa, respectively, for two successive issues notice to the holders of the outstanding bonds of the petitioner, directing every holder thereof to deposit any and all bonds of the petitioner with the disbursing agent

within the thirty-day period above provided, or thereafter with the clerk of this court, for payment in accordance with this decree, or to be forever barred from claiming or asserting as against petitioner or any individually owned property located within petitioner district or the owners thereof any claim or lien arising out of said bonds; * * *

"That after the expiration of thirty days from the date of receipt of the funds to carry out the terms of the plan of composition and retire the outstanding indebtedness as provided in such plan, the disbursing agent shall make full and complete report to this court for confirmation, including an itemized statement of all receipts and disbursements, together with a list of old bonds outstanding at the time of such report, showing serial number of and amount of each outstanding unpaid bond."

No notice of the entry of the interlocutory decree was received by appellants. No appeal was taken from the interlocutory decree. The time within which such an appeal might have been taken expired on April 20, 1942—40 days after the entry of the interlocutory decree.[10]

As provided in the plan, appellee borrowed $76,800 from the R.F.C. and, to secure the loan, issued and delivered to the R.F.C. $76,800 of new bonds.[11] On June 25, 1942, appellee deposited the proceeds of the loan ($76,800) with the disbursing agent for payment to the holders of its old bonds, as provided in the plan. Of the $76,800 so deposited, $2,200 (20% of $11,000) was payable to appellants.

On June 29, 1942, appellee advised the clerk of the District Court that it had deposited with the disbursing agent on June 25, 1942, the $76,800 which, under the terms of the plan, was to be paid to the holders of its old bonds.[12] Thereupon the clerk caused notice to be published in the Wall Street Journal (Pacific Coast Edition) and the Colusa Sun-Herald for two successive issues—on July 2, 1942, and July 3, 1942—as provided in the interlocutory decree. Appellants never saw the notice.

On August 17, 1942, the disbursing agent reported to the court that it had received

9 See § 83, sub. e, of the Bankruptcy Act, 11 U.S.C.A. § 403, sub. e.

10 See § 25, sub. a, of the Bankruptcy Act, 11 U.S.C.A. § 48, sub. a; Jordan v. Palo Verde Irrigation Dist., 9 Cir., 105 F.2d 601; Bekins v. Lindsay-Strathmore Irrigation Dist., 9 Cir., 106 F.2d 586.

11 Sixty-eight bonds of the face value of $1,000 each, 17 bonds of the face value of $500 each and one bond of the face value of $300.

12 See § 83, sub. f, of the Bankruptcy Act, 11 U.S.C.A. § 403, sub. f.

the $76,800 from appellee on June 25, 1942; that it had received 326 of appellee's old bonds and had paid for them by paying to the holders thereof $65,200 and depositing with the clerk of the District Court $2,040 on account of unpaid interest coupons missing therefrom; that 58 of appellee's old bonds (including the 11 bonds held by appellants) were still outstanding; and that it had deposited with the clerk $11,600 (20% of $58 000) for payment to the holders of the 58 bonds. Thus it appeared that the disbursing agent had deposited with the clerk a total of $13,640 ($2,040 plus $11,600), of which $2,200 was payable to appellants.

On August 17, 1942, the court approved the disbursing agent's report and entered a final decree determining that appellee had made available for the creditors affected by the plan the consideration ($76,800) provided for therein and was discharged from all debts and liabilities dealt with in the plan, and that the plan was binding upon all creditors affected thereby.[13] The final decree provided:

"That the sum of $13,640, paid into the registry of this [district] court by the disbursing agent, be disbursed by the registrar [clerk of the court] for the purpose of taking up and retiring and refinancing, in accordance with the plan of composition approved in this cause, such remaining outstanding old obligations of the petitioning district [appellee] as are affected by the plan of composition, and which may be presented to the registrar for that purpose within the period of twelve months from the date hereof; that all such obligations so presented and paid for be forthwith canceled and returned to the petitioning district by the registrar; that all such outstanding old obligations of the petitioning district which are not so presented to the registrar within twelve months from the date hereof shall thereafter be forever barred from participating in the plan of composition or in the funds held in the registry of this court; that upon the expiration of the period of twelve months from the date hereof, the clerk of this court shall forthwith notify the [R.F.C.], by registered letter addressed to it at Washington, D.C., of the

amount of funds then remaining in the registry of the court, and that the same are available for the purchase of new bonds of the petitioning district then held by the [R.F.C.], at par and accrued interest; that any new bonds so purchased shall be forthwith canceled and returned to the petitioning district by the registrar; that any part of such funds which are not used for such purpose within sixty days after the date of mailing such notice, shall thereupon be paid by the registrar of this court to and used solely by the petitioning district in the payment of its new bonds and interest thereon; * * * *"

No notice of the entry of the final decree was received by appellants. No appeal was taken from the final decree. The time within which such an appeal might have been taken expired on September 26, 1942 —40 days after the entry of the final decree.[14]

Of the 58 old bonds which (as shown by the disbursing agent's report) remained outstanding on August 17, 1942, 33 were presented to and paid for by the clerk within the period of 12 months specified in the final decree—the period from August 17, 1942, to August 17, 1943—and 25 (including the 11 bonds held by appellants) were not so presented and were not paid for. For the 33 bonds so presented to him, the clerk paid to the holders thereof $6,600 of the $13,640 which the disbursing agent had deposited with the clerk. Of that $13,640, there remained in the clerk's hands on August 17, 1943, $7,040, of which $2,200 belonged to appellants.

On August 31, 1943, the clerk purchased from the R.F.C. for appellee, and delivered to appellee, $6,800 of appellee's new bonds,[15] paid the R.F.C. for the bonds so purchased $6,844.58[16] of the $7,040 mentioned above, and paid the balance ($195.42) to appellee. Thus the entire $7,040 (including appellants' $2,200) was paid to appellee or expended for appellee's use and benefit on August 31, 1943.

On an undisclosed date between August 31, 1943, and August 18, 1944, appellants presented and tendered to the clerk the 11 bonds held by them, with all unpaid interest coupons attached, and requested payment of

[13] See § 83, sub. f, of the Bankruptcy Act, 11 U.S.C.A. § 403, sub. f.

[14] See § 25, sub. a, of the Bankruptcy Act, 11 U.S.C.A. § 48, sub. a; Du Pont v. Okeechobee County, 5 Cir., 135 F.2d 577.

[15] Six bonds of the face value of $1,-000 each, one bond of the face value of $500 and one bond of the face value of $300.

[16] The bonds were purchased at par, plus accrued interest.

the $2,200 belonging to them. The request was refused. On August 18, 1944, appellants. moved the court to order appellee and the clerk to pay appellants the $2,200 "and, if necessary for that purpose, to modify the terms of the final decree and to extend the time thereof for the deposit of said bonds and, if necessary for that purpose, to relieve [appellants] from their default, if any herein, and to grant them the right to appear and claim the payment provided for by the plan of composition despite the provisions of the final decree." The court entertained the motion, heard it, considered it and, on September 19, 1944, entered an order denying it and directing that the bonds theretofore presented and tendered by appellants be returned to them. From that order this appeal is prosecuted.

■ As indicated above, $2,200 of the $7,040 which the clerk paid to appellee or expended for appellee's use and benefit on August 31, 1943, belonged to appellants, not to appellee. Appellee nevertheless accepted and retained the benefit of what the clerk did on August 31, 1943. Thus, in effect, appellee took and appropriated to its own use and benefit appellants' $2,200. Appellants' motion sought to compel appellee to make restitution. We think the motion should have been granted.

It is true that the 11 bonds held by appellants were not presented to the clerk within the period of 12 months specified in the final decree, but it is also true that appellants had no notice of the entry of the final decree. Such notice could and should have been given. The clerk knew, and appellee knew, that appellants held these bonds and were entitled to be paid therefor $2,200 of the $13,640 which the disbursing agent had deposited with the clerk. The address of one (if not both) of the appellants was known to the clerk and to appellee. There was no excuse for failing to notify appellants of the entry of the final decree.

It is true that the final decree provided, in substance and effect, that all outstanding old bonds of appellee (including the 11 bonds held by appellants) which were not presented to the clerk within the specified period of 12 months should "be forever barred from participating in the plan of composition or in the funds" deposited with the clerk, and that the "funds" remaining on deposit with the clerk at the end of the specified period of 12 months should be paid to appellee or expended for appellee's use and benefit—in purchasing from the R.F.C., for appellee's account, new bonds of appellee held by the R.F.C. Since, however, appellants had no notice of the entry of the final decree, we think these provisions should not apply to them. We accordingly hold that the final decree should be modified as prayed in appellants' motion.

It is true that the time for appealing from the final decree expired before appellants' motion was filed. The court nevertheless had power to entertain and grant the motion.[17]

■ It is suggested that the court was powerless to entertain the motion because of the expiration of the term at which the final decree was entered. There is no merit in the suggestion; for this was a bankruptcy case, and there are no terms in bankruptcy.[18]

■ It is said that the court was powerless to entertain the motion because of intervening rights—rights which (it is said) became vested upon the faith of the final decree before the motion was filed, and which (it is said) would be prejudiced by the granting of the motion. The record discloses no such rights.

It is said that the motion, if entertainable, was addressed to the sound discretion of the court. If so, we think the denial of the motion was an abuse of that discretion; for the denial (if upheld) would lead to a grossly inequitable result—the retention by appellee of that which obviously belongs to appellants.

Order reversed and case remanded with directions to grant appellants' motion.

---

[17] Wayne United Gas Co. v. Owens-Illinois Glass Co., 300 U.S. 131, 57 S.Ct. 382, 81 L.Ed. 557.

[18] Wayne United Gas Co. v. Owens-Illinois Glass Co., supra.