**GLADEVIEW DRAINAGE DISTRICT, PALM BEACH COUNTY, FLORIDA, Public Debtor, Appellant,**

v.

**Edna L. KEYES et al., Appellees.**

**No. 16748.**

United States Court of Appeals Fifth Circuit.

June 30, 1958.

As Modified on Denial of Rehearing Aug. 26, 1958.

D. P. S. Paul, Francis W. Sams, Paul & Sams, Miami, Fla., for appellant.

Joseph C. Young, Clearwater, Fla., for appellee.

Before CAMERON, JONES and BROWN, Circuit Judges.

CAMERON, Circuit Judge.

Before us here is the question of the validity of an order entered by the District Court requiring the exchange of "new" bonds for bonds of a Florida drainage district which had, more than three years before the present action was begun, been canceled by the court be-

low in a Composition Proceeding under Chapter IX of the Bankruptcy Act as amended (11 U.S.C.A. §§ 401–403). The order here appealed from purported to amend the final decree in the original proceedings and directed appellant, Gladeview Drainage District, to exchange five $1,000.00 bonds, long since matured, for new refunding bonds to be issued by appellant, when no claim had been filed in the bankruptcy proceeding within the time fixed by the court's order.

Said decree was entered pursuant to a petition filed January 11, 1956 by appellee, Edna L. Keyes, alleging that she was a citizen of Ohio and had inherited from her mother five $1,000.00 "Gladeview Drainage District and Road Bonds" which had matured June 1, 1944. She averred that her demand upon appellant for new bonds had been refused on the ground that the final decree of the court below had canceled and annulled said bonds. She averred further that the bankruptcy proceedings relied upon by appellant were invalid and without effect, but without assigning any specific grounds for the claimed invalidity.

Appellant moved to dismiss the petition on the ground that it failed to state a claim upon which relief could be granted and answered, setting forth in detail the court proceedings which had culminated in the final decree entered June 27, 1952, which canceled the original issue of bonds, including those held by petitioner. The controversy was heard by the court below upon written stipulation of the parties, the pertinent portions of which follow:

The appellant Drainage District was in default on its entire indebtedness for more than twenty-two years following the year 1929; and on October 24, 1951, it filed in the court below its petition under said Chapter IX for the approval and confirmation of a plan of composition therein set forth. On the following day, the court entered its order approving the filing of the petition, directing that notice by publication be given to creditors and security holders, and setting a hearing on January 11, 1952. The notice was duly published as provided by the order of the court and in conformity with the statute, and appellee does not charge that it was in any way defective. It required all creditors and security holders of the District to file sworn proofs of claim by the last mentioned date, and appellee's mother, who then held the bonds, did not file any claim. The District Court, therefore, entered its order on January 11, 1952 confirming the plan and requiring the holders of any securities upon which proofs of claim had not been filed to tender their securities prior to the entry of a final decree, or be barred from participation in the plan.

Thereupon, January 28, 1952, appellant began a proceeding in a Florida State Court in which a decree of validation of the new bonds issued pursuant to said plan was entered. An appeal was taken to the Supreme Court of Florida, which, on June 3, 1952, affirmed the order validating the issue of refunding bonds in an amount sufficient to cover the claims filed in the bankruptcy proceedings.

Thereafter, on June 27, 1952, the court below entered its final decree canceling the claims of all creditors and security holders of the District other than those who had seasonably proved their claims, and enjoining them from asserting further claim upon the unproven securities. The decree here appealed from was, as above set forth, rendered in the original bankruptcy proceedings and amended the final decree which the court had entered June 27, 1952.

Appellee urged before the court below and before us that the decree wiping out the unproven claims was against the letter and spirit of said Chapter IX which, she argues, does not contain any provision specifying a time period for the filing of claims by creditors; and that the decree entered by the court below June 27, 1952, canceling all outstanding claims not filed and enjoining further prosecution of them, was invalid. The factual basis, as set forth in the stipulation upon which the claim for equitable relief was based, was that appellee ac-

quired the bonds January 12, 1954 by inheritance from her mother; that from April, 1945 until her death, November 17, 1952, her mother had been childish and senile; that the only claims filed in the original Chapter IX proceedings were by three creditors owning 89% of the District's debts, all represented by judgments; and that the entire issue of refunding bonds was received by said creditors in exchange for their judgments. These facts, appellee urges, establish a species of subtle fraud from which she should be protected.[1]

Appellant, in turn, contends that the Chapter IX proceedings were regular in every way, that the law itself is valid, and that the decree canceling the claims not filed pursuant to the proceeding constituted an effective bar to the claim presented by appellee. Appellant also brings in some equitable considerations, such as the transfer of some of the refunding bonds since their issue, that the land constituting the District had changed hands and had acquired much greater value since the composition was approved, that the District was without funds with which to pay the claim of appellee, and that the taxing authorities had levied sufficient tax only to comply with the final decree of the court dated June 27, 1952.

We are in complete agreement with the appellant, and find no merit in appellee's position. All of the vital questions relied upon by her were settled against her contentions in San Augustine County, Texas v. Cameron County Water Improvement District, 5 Cir., 1953, 202 F.2d 932. Appellant tracked, in every material particular, the steps there approved as complying with the statutes and as constituting due process of law. We there stated, citing a number of Supreme Court cases (at page 935):

"This composition in bankruptcy is in the nature of a proceeding *in rem* as it essentially determines a status. Publication of notice in the manner stated therefore constitutes due process, as to unknown creditors. With the filing of this petition, its approval by the judge, and the giving of notice in the manner stated, the fiscal affairs of the district become subject to the jurisdiction of the court of bankruptcy, * * *

"It follows that the decrees above mentioned were rendered upon due process, that they are binding upon appellant, and have become *res judicata*. * * *"

No authority is cited to support appellee's contention that her mother's disabilities entitled appellee, her heir, to special treatment, and there was no proof or finding by the trial court of any fraud. In the San Augustine case, supra, we quoted from a decision of the Supreme Court, Huling v. Kaw Valley Railway & Improvement Company, 130 U.S. 559, 9 S.Ct. 603, 605, 32 L.Ed. 1045, the statement that "It is * * * the duty of the owner of real estate who is a non-resident, to take measures that in some way he shall be represented when his property is called into requisition; and, if he fails to do this, and fails to get notice by the * * * publications * * * required in such cases, it is his misfortune, and he must abide the consequences."[2] We there applied the same

1. Her brief refers to the original bankruptcy proceedings in these words:
"The dispatch with which these proceedings were prosecuted was not mere happenstance; it was the result intended by the man who owned a vast majority of the lands in the District * * *, approximately 20% of the debt, and who was, in addition, the President of the Board of Supervisors of the District * * * He had to obtain the consents of the nonlandowning holders of nearly 70% of the debt in order to put the composition proceedings through. He agreed to pay so much per acre and the two largest creditors agreed to take it. The other creditors, the 10% or so not holding claims in the form of judgments, if allowed to participate, would have complicated matters for the landowner, thus this plan and its speedy conclusion."
The last three sentences of this quotation apparently do not find support in the record.

2. 202 F.2d 932, 934–935.

principle to bonds, using this language: "It was their duty to take measures to be informed when their bonds were called into question by this proceeding and they were warned by a reasonable publication of notice to appear and defend their interest."[3]

In a deposition given by appellee, it was revealed that she actually knew of the proceedings, whose final decree barred her participation in the plan of composition, more than a year before she initiated this action. The final decree foreclosing her rights had been entered more than three and one-half years prior thereto. It is difficult to understand how appellee was injured by what she claims was unseemly haste in bringing the bankruptcy proceeding initially to its conclusion.[4] She seems to concede that the more leisurely tempo observed in the proceedings in San Augustine, supra, where claims could be filed within one year from the final decree, was unexceptionable.

3. The case of Bekins v. Compton-Delevan Irr. Dist., 9 Cir., 1945, 150 F.2d 526, certiorari denied 326 U.S. 772, 66 S.Ct. 230, 90 L.Ed. 467, relied upon by appellee, has no application here. There, the Bekins appeared in response to published notice and filed their claim and the court set aside an amount to pay the bonds upon their surrender. The surrender was made after the time specified in the decree, and the court merely held that, notwithstanding this, the Bekins were entitled to be paid the money set aside in the decree to cover their claim. We have no similar situation here.

4. In considering her contentions as epitomized in the quotations from her brief, Footnote 2, supra, it is helpful to set out, so that it can be seen at a glance, the chronology of the important events:
June 1, 1944, These bonds matured; the District had been in default in all its obligations since 1929.

It is the fact of publication of notice which is important and not the period given in which claims may be filed, so long as that period is not so short as to condemn the whole proceeding as lacking in due process. We do not think that the period of more than five months provided in these proceedings was so brief as to work such a condemnation. Particularly is this true under the circumstances before us which reveal that appellee would not have been benefited if these proceedings had provided for a time limit more than three times that given in San Augustine.

It follows that the court below erred in recognizing appellee's claim and in entering its order amending the final decree originally entered, and that her petition should have been dismissed with prejudice.

For the entry of such on order, the decree appealed from is reversed and the cause remanded.

Reversed and remanded.

Oct. 24, 1951, Chapter IX proceedings begun.
Oct. 24, 1951, Order requiring notice to be given that all claims must be filed 10 days before Jan. 11, 1952 and publication thereof duly made; followed by interlocutory decree of Jan. 11, 1952 extending the right of security holders to tender their securities for exchange at any time prior to entry of final decree.
June 27, 1952, Final decree canceling claims which were not filed.
Nov. 17, 1952, Appellee's mother died.
Jan. 12, 1954, Appellee acquired bonds from representatives of her mother's estate.
Dec. 1, 1954, Appellee was advised of the bankruptcy proceedings which wiped out her bonds.
Jan. 11, 1956, This action was begun.