## In the Matter of SANITARY & IMPROVEMENT DISTRICT NO. 7, LANCASTER COUNTY, NEBRASKA, Debtor.

### Bankruptcy No. BK85–39.

United States Bankruptcy Court,
D. Nebraska.

March 6, 1990.

---

See also, Bkrtcy., 98 B.R. 970.

Thomas H. Dahlk and Sandra Dougherty, Attys., Omaha, Neb., for Nebraska Sec. Bank.

Elaine Martin, Atty., Omaha, Neb., for Arley A. Westendorf.

Kenneth C. Stephan, Atty., Lincoln, Neb., for Dain Bosworth.

Richard J. Butler, Mark A. Beck, Attys., Lincoln, Neb., for debtor.

## MEMORANDUM

TIMOTHY J. MAHONEY, Chief Judge.

Hearing was held on January 16, 1990, in Lincoln, Nebraska, on two motions, Filing No. 459 and Filing No. 462, requesting leave to file a proof of claim after claims bar date. Thomas H. Dahlk and Sandra Dougherty of Lieben, Dahlk, Whitted, Houghton & John of Omaha, Nebraska, appeared on behalf of movant, Nebraska Security Bank, (Bank). Elaine M. Martin of Martin & Martin, P.C., Omaha, Nebraska, appeared on behalf of movant Arley A. Westendorf, (Westendorf). Kenneth C. Stephan of Knudsen, Berkheimer, Richardson & Endacott, Lincoln, Nebraska, appeared on behalf of Dain Bosworth. Richard J. Butler and Mark A. Beck of Erickson & Sederstrom, P.C., Lincoln, Nebraska, appeared on behalf of debtor.

These matters are core proceedings as defined by 28 U.S.C. § 157(b)(2)(A) and (B). This memorandum constitutes findings of fact and conclusions of law required by Fed.Bankr.R. 7052.

### Facts

Debtor, a sanitary and improvement district located in Lancaster County, Nebraska, filed a petition under Chapter 9 of the Bankruptcy Code on January 10, 1985. A notice of the filing was sent to all parties in interest, including the movants, and, during February of 1985, a List of Creditors was filed by the Debtor. All claims were listed as disputed, contingent or unliquidated. Both of the movants were listed as potential creditors and on the List of Creditors both were shown as having claims which were disputed, contingent or unliquidated. On July 12, 1985, the District mailed to all creditors a Notice of Meeting of Creditors with Revised Order for Meeting of Creditors attached. The Revised Order stated,

in relevant part: "Creditors whose claims are listed as disputed, contingent, or unliquidated as to amount and who desire to participate in the case or share in any distribution must file their proofs of claims on or before the date above fixed for the meeting."

On July 26, 1985, the District mailed a second notice with an order stating that the claims bar date was September 15, 1985, and that all debts were listed as disputed, contingent, or unliquidated. (Filing No. 74).

By live testimony of the president of the bank and by affidavit testimony by the moving party, Westendorf, the Court received evidence that neither of the movants received the July 1985 notice that September 15, 1985, was the bar date for filing proofs of claims, nor did they receive the July 1985 notice that all claims were listed as disputed, contingent or unliquidated.

In the fall of 1988, the debtor had proposed a plan of adjustment under Chapter 9. All parties, including the bank and Westendorf, received notice of hearing on a disclosure statement and eventually received a copy of the disclosure statement and the plan of adjustment. In addition, both the bank and Westendorf received ballots to be used in voting for or against the proposed plan of adjustment. Both movants voted in favor of the plan of adjustment.

Between November of 1988 and late May of 1989, the Court held a number of hearings on amended or modified plans which superseded the original plan voted upon in November of 1988. All parties, including the bank and Westendorf, received notice of the hearings and notice of an opportunity to revote if they decided to change their vote. After a trial in early May of 1989, this Court denied confirmation of a modified plan which the Court determined did not adequately provide for bondholders as required by law. The District then amended the plan to meet the objections of the Court and, after notice and hearing, the Court confirmed the plan as so modified.

From at least mid–1988 through confirmation in 1989, this case was hotly contested. There were two separate creditors' committees, one representing bondholders and one representing warrantholders. Several creditors retained individual counsel to represent them in the proceedings.

As a result of the contested nature of the proceedings, several disclosure statements and plans were filed prior to confirmation finally being ordered. At Filing No. 230, the Court sustained an objection to the District's Third Amended Substituted Disclosure Statement, partly on the basis that no information on claims was contained in the Disclosure Statement. The District then filed a Fourth Amended, Modified and Substituted Disclosure Statement at Filing No. 259. Pages 19 through 23 discuss the status of claims and recite the claims bar date and that all debts were listed as disputed, contingent and unliquidated.

Movants received this Disclosure Statement and they received the debtor's Fourth Amended and Substituted Plan of Adjustment, Filing No. 258. The Plan explained at Paragraph 1.01 that an *allowed claim* was a claim:

(a) in respect of which a proof of claim has been filed with the court within applicable periods of limitation fixed by the court pursuant to Bankruptcy Rule 3003 and the claims bar date or

(b) appearing in the debtor's filings pursuant to Rule 1007 and not listed as disputed, contingent or unliquidated as to amount, . . . .

The Plan, at Paragraph 1.07 defined the Claims Bar Date as September 15, 1985, the date established by the Court by which all claims were to be filed.

The final plan which was ultimately confirmed by the Court is identified as Debtor's Fourth Amended and Substituted Plan of Adjustment as Modified, Filing No. 343. It contained language similar to the above-quoted language defining an allowed claim.

The Supplement to the Disclosure Statement, Filing No. 355, which movants received prior to confirmation, contained several pages of information concerning the status of claims and recited the claims bar date and further recited that all claims had

been listed as disputed, contingent and unliquidated.

The evidence at trial on the confirmation of the Plan of Adjustment showed that the District's initial List of Creditors reflected bond debt of $5,575,853 and warrant debt of $13,348,197. However, the total claims which were to be treated by the Plan were $5,192,602 for bonds and $11,718,625 for warrants. (Trial Exhibit 24.)

The Plan which was confirmed provided for the District to issue new bonds and warrants as substitutes for the bonds and warrants represented by the filed claims. The Plan also provided that the District would enter into an agreement with a trustee or disbursing agent, transfer certain assets to that disbursing agent and that the disbursing agent would then be responsible for the exchange procedures. Following confirmation, the District entered an agreement with FirsTier Bank Lincoln, N.A. The Plan, at Article VI, provides that the disbursing agent is obligated to pay or exchange instruments with those creditors that have allowed claims. The Plan does not set a deadline for the exchange of old bonds for new bonds.

Following confirmation, the District then transferred the remaining bond funds to the disbursing agent. It issued new bonds and warrants pursuant to the plan and delivered the new bonds and warrants to the disbursing agent. The District then applied for a Discharge Order pursuant to 11 U.S.C. § 944. Notice of the Discharge hearing was provided to parties in interest and a Discharge Order was granted on September 7, 1989, with the Court directing that the case be closed.

For administrative reasons not relevant here, the case was not closed and has not yet been closed.

In December of 1989, the City of Lincoln, Lancaster County, Nebraska, annexed all of the territory within the boundaries of this sanitary and improvement district. The annexation was contemplated by the drafters of the plan and was made clear on the record at trial on confirmation. The proponents of the plan had urged the Court to act with dispatch concerning the confirmation issues so that the obligations of the District would be fixed, the bond and warrantholders represented by claims filed would know the amount they could anticipate receiving, and the City of Lincoln could consider annexation of the District with full knowledge of the maximum amount of obligations being assumed by the City.

These movants did not actively participate in the bankruptcy proceeding. They did not employ the services of counsel to monitor the case. They did not request notice of the various matters occurring in the proceeding. They did not file claims.

The disbursing agent sent a notice to the holders of all bonds and warrants that such instruments should be submitted for exchange. The list used by the disbursing agent was not limited to the holders of bonds and warrants that had filed claims, but was the general list of outstanding bonds and warrants. These moving parties received the notice from the disbursing agent and submitted their documents. The disbursing agent reviewed the documents submitted and compared it to the list of allowed claims and, because no claims had been filed by these movants, the disbursing agent rejected the submission and refused to exchange new bonds and/or warrants for the proffered instruments.

Following rejection by the disbursing agent, the movants filed these pending motions requesting the Court to authorize them to file claims out of time.

At the hearing, movants presented evidence that they had not received notice of a claims bar date in the summer of 1985. Although the District presented an affidavit in an effort to show the Court that all parties had received the notice of the claims bar date on a timely basis, this Court finds as a fact that the moving parties did not receive such notice. The evidence presented by the District was not a statement based upon personal knowledge of the affiant. The certificate of service which was filed with regard to notice of the claims bar date did not list any specific recipients, but simply alleged that all interested parties had been provided notice.

The evidence by the movants is sufficient to convince this Court that they did not receive actual notice of the claims bar date between July and September, 1985.

### Discussion and Conclusions of Law
#### A. Claim filing, confirmation, discharge, distribution rights

█ Movants argue that in Chapter 11 cases, many courts have permitted the late filing of a claim, even after an order of discharge had been entered pursuant to Section 1141 of the Bankruptcy Code. Under Chapter 11, debts are discharged if creditors have either been listed or have knowledge of the case in time to file a timely proof of claim. 11 U.S.C. § 1141(d)(2). Under that section, if a creditor does not receive timely notice, it is possible that the debt is not discharged in a Chapter 11 case.

Under Chapter 9, there is a discharge section with provisions different from the Chapter 11 discharge section. Section 944 of the Bankruptcy Code discharges all debts except debts "owed to an entity, that, before confirmation of the plan, had neither notice nor actual knowledge of the case." 11 U.S.C. § 944(c)(2). The discharge section of Chapter 9 does not require creditors to have a reasonable opportunity to file timely proofs of claim prior to confirmation. The only limitation on discharge in Chapter 9 is for those obligations owed to creditors who did not have notice or actual knowledge of the case before confirmation. It is appropriate for the Court to grant creditors the opportunity to file a claim after the bar date, but before confirmation, because those claims can be treated in the plan and the creditor should be permitted to participate in distribution if the creditor has knowledge of the case and acts before confirmation.

In this case, some claims were allowed after the claims bar date but prior to confirmation, apparently because some claim holders read the language of the disclosure statements and the proposed plans correctly. That is, they realized that all claims were listed as disputed, contingent or unliquidated and that they would not be able to participate in distribution if they did not file a claim. The District's governing authorities did not believe it unfair to permit late participants to file claims.

In a Chapter 9 case, the confirmation of a plan is a significant event. Under 11 U.S.C. § 944(a), the provisions of a confirmed plan bind "the debtor and any creditor, whether or not proof of such creditor's claim is filed; whether or not such claim is allowed under Section 502; and whether or not the creditor has accepted the plan."

One commentator has described the effect of confirmation of a Chapter 9 plan in this manner:

> The binding effect of the plan is not vitiated by the failure of a creditor to file a proof of its claim or have such proof be filed, by the allowance or disallowance of the claim, or by the creditor's acceptance or nonacceptance of the plan. Thus, the debtor is given complete relief by the plan and the order of confirmation, and the debtor's affairs are totally adjusted by the plan and the order, notwithstanding any failure of creditors to participate in the debt adjustment case or in the plan confirmation process. Without such a provision, creditors would frustrate the beneficial effects of Chapter 9 by "staying home" or "keeping their hands in their pockets."

4 Collier on Bankruptcy, ¶ 944.02, at 944–4 (15th ed.1989) (footnotes omitted).

At least one court has reviewed the binding effect of a confirmation order in a Chapter IX case under the Bankruptcy Act in effect prior to the adoption of the 1978 Code. In substance, the statutory provisions with regard to confirmation of a Chapter IX case were the same as the statutory provisions of Section 944 of the current Bankruptcy Code. See 4 Collier on Bankruptcy, ¶ 944.01, at 944–2 (15th ed.1989). The case, Gladeview Drainage District v. Keyes, 258 F.2d 273 (5th Cir. 1958), prohibited a bondholder from participating in distribution in a Chapter IX case when the bondholder had failed to file a claim prior to confirmation. The bondholder claimed in that case, as the movants have in this case, that actual notice of the

claims bar date was not received. However, the bondholder did know of the existence of the bankruptcy case. The Court held that the bondholder was bound by the terms of the plan regardless of whether the creditor had actual notice of the claims bar date. Since the bondholder had failed to file a proof of claim, the bondholder had no right to participate in the distribution process under the confirmed plan. *Id.* at 274–76.

This Court concludes that the movants, though not having received actual notice of the claims bar date prior to September 1, 1985, did have notice of the case, the opportunity to read the provisions of the various disclosure statements and plans which required claims to be filed in order to participate in distribution, did have notice that all claims were listed as contingent, unliquidated or disputed, and did have notice that only those creditors filing claims could participate in distribution.

The motions for leave to file a proof of claim after the claims bar date are denied. Movants had notice of the case and received more than one disclosure statement and plan which instructed them that in order to participate in distribution, they would be required to file a claim. They did not file a claim. The plan was confirmed. The debtor issued new bonds and warrants pursuant to the plan which do not exceed in value the amount of claims filed. As a practical matter, there is no fund available for these movants to participate in or receive distribution from. The fund available equals the amount of claims filed. In addition, the debtor, after notice and hearing, has received a discharge of all obligations existing prior to the date of confirmation. Therefore, the obligations owed to these movants on petition date are discharged. No appeal was taken from the discharge order and it is final. Therefore, the movants have no legitimate right to payment from the debtor.

#### B. *Informal proof of claim*

■ Movants argue, as an alternative to granting permission to file a claim out of time, that the Court should determine that each of them had filed an informal proof of claim which can be amended or modified at this time to permit them to participate in distribution. They each argue that the debtor had full knowledge of the name of the claimant, the type of instrument through which the claimant had the right to be paid by the debtor and the amount of the obligation running from the debtor to the claimant. The movants argue that since the debtor had all of the information necessary to make a determination of the legitimacy of the obligations, the debtor should not be permitted simply ignore the rights of the movants. However, to accept the argument of the movants would require the Court to ignore Fed.Bankr.R. 3003(c)(2), (3), (4). It would also require the Court to ignore what actually occurred in this case, including the initial scheduling of claimholders, the request for and granting of a claims bar date, the language of various disclosure statements and plans, the plan which was confirmed, and the application for and the granting of a discharge.

Early in this case, the debtor complied with the Code by filing a list of creditors whose claims were all listed as contingent, unliquidated or disputed. No party ever challenged such listing. The debtor, on the initial filing of the petition, was not in possession of a list of all bond and warrantholders. Those listings were in the possession of the fiscal agent. Apparently the listing held by the fiscal agent had names and addresses of bond and warrantholders as of the initial purchase date, which, due to the possibility of transfers or assignments of rights in the bonds and warrants, was not necessarily accurate. Movants, at this late date, want this Court to find that it was inappropriate to list all obligations as contingent, unliquidated or disputed. There is no authority for such a finding by the Court at this time.

Section 3003(c)(2) of the bankruptcy rules states:

(c) *Filing proof of claim.*

(2) *Who must file.* Any creditor or equity security holder whose claim or interest is not scheduled or *scheduled as disputed, contingent or unliquidated*

*shall file a proof of claim or interest within the time prescribed* by subdivision (c)(3) of this rule; *any creditor who fails to do so shall not be treated as a creditor with respect to such claim for the purposes of voting and distribution.* (Emphasis added).

Fed.Bankr.R. 3003(c)(2).

Although these movants received notice of the plan and disclosure statement and were permitted to file ballots or objections to the confirmation of the various plans, such opportunity granted to these movants was erroneous. They should not have been permitted to vote because they had not filed a claim. Movants argue that since they were permitted to vote the debtor must have been acknowledging their right to payment. However, even though the debtor was in error by permitting the movants to vote, such error shall not be compounded by this Court by permitting these movants to participate in distribution when they have not filed a claim as required by the rule and as provided by the plans and disclosure statements filed in the case and received by these movants.

The Court finds that the movants have not filed an informal proof of claim nor should the existence of the movants as holders of bonds or warrants be construed as informal proofs of claim enabling them to participate in distribution.

## C. *Jurisdiction*

 The City of Lincoln, Nebraska, has annexed the debtor. Counsel appearing on behalf of the debtor for purposes of this motion takes the position that this Court does not have jurisdiction to decide this matter. Counsel's theory is that the debtor has been annexed and, therefore, under state law the debtor no longer exists. If it does not exist, there is no entity with a case pending before the Court. Since the City of Lincoln has not filed a Chapter 9 petition, it is not before this Court and this Court has no power to adjudicate any matters concerning the City of Lincoln, including the use of its property.

Notwithstanding 11 U.S.C. § 903 and § 904, the sections which reserve to the states the power to control municipalities and which limit the jurisdiction and powers of the court, this Court has jurisdiction to determine matters concerning the implementation of the plan. 11 U.S.C. § 945(a). The issues brought by these movants concern the plan, its interpretation, and its implementation. The Court is not divested of jurisdiction simply because the plan has been confirmed and a discharge granted.

Separate journal entry shall be entered.